BREAUX, C. J.
The State National Bank sued the board of commissioners of New Orleans for $18,750, with 5 per cent, interest from March 1, 1905.
From an adverse judgment allowing this amount and interest, defendant appealed.
Plaintiff bought bonds of the defendant to the amount of $750,000. They.consist of the entire issue of $250,000, Series A, of $1,000 each, payable in 10 years from September 1, 1004.
Plaintiff alleged that they bore 5 per cent, interest per annum, payable semiannually on the 1st of March and September, evidenced by coupons attached.
Plaintiff also bought second Series B, of $500,000, forming part of sum first above mentioned, payable in 20 years from the same date, and bearing a similar rate of interest (as the $250,000 above stated), represented by coupons.
The board of commissioners advertised on the 1st of February, 1905, that they would receive sealed proposals for the purchase of these bonds.
Through a proper officer representing the bank, on the faith of this advertisement, it is stated plaintiff put in a bid for the entire amount of these bonds. The bid (an extract from which we will insert in a moment! was accepted. Plaintiff entered into an agreement with defendant whereby all of its rights were reserved in order to let them be passed upon by the courts.
.Plaintiff insists that no attempt was made to detach the coupons until after it had purchased these bonds and coupons.
The purchase price was paid for these bonds, but the right of plaintiff, as above mentioned, was reserved. That is not questioned in any way.
Defendant’s contention is that the bank is not entitled to interest not earned by it; that the board was not authorized to sell the bonds with interest from the date of the bonds; and that interest began to run from the date that the bonds were transferred.
On appeal, the appellant moved to remand the case for the reason that it was stated in *272 argument and in the brief that the bonds were signed by the president and secretary of the board on the 1st of September, 1904; that the admission was made in error of fact; and that the truth is that the bonds in question although lithographed of date September, 1904, were signed after the reception of the bid on the 1st of March, 1905.
There is an affidavit appended to the motion to remand. The reply of plaintiff to this motion to remand renders it unnecessary to remand the case, for it is admitted that the facts are as set forth in the motion and in the affidavit appended to the motion.
The bonds were issued under Act No. 44, p. 98, of the Legislature of 1904. The following is the first section of the act:
“Serios A shall be issued to the sura of two hundred fifty thousand dollars, payable in ten years from September 1, 1904, and shall be in the denomination of one thousand dollars each.
“Series B shall be issued to the amount of seven hundred fifty thousand dollars, payable twenty years from September 1, 1904 and bonds from number one to five hundred shall be in the denomination of five hundred dollars each; and bonds from number five hundred one to one thousand shall be in the denomination of one thousand dollars each.
“Series O shall be issued to the sum of one million dollars, payable thirty years from September 1, 1904, and bonds from number one to six hundred shall be in the denomination of five hundred dollars each, and bonds from number six hundred one to thirteen hundred shall be in the denomination of one thousand dollars each.
“All of said' bonds shall bear interest at the rate of five per cent, per annum from the date of their issue, said interest to be evidenced by coupons attached to said bonds, payable semi-annually.”
All the coupons including those due March 1, 1905, were attached to the-bonds.
It is evident, we think, that the interest that had accrued added value to the bond, and, in all probability, exerted its influence on the bidder in matter of the bid.
The defendant board of commissioners advertised these bonds for sale as bearing interest at 5 per cent., passable semiannually on the 1st of March, 1905. The bonds advertised contained the statement that by instruction of the board, the president of the board and the secretary signed them on the 1st of September, 1904.
Although this statement was contained in the bonds, it seems that they were not signed, but in other respects they were complete.
As relates to interest, the advertised bonds stated that which is imminent here, that the defendant board promised to pay on September 1, 1914, the amount stated, with 5 per cent, interest per annum thereon, payable semiannually on the 1st day of March, 1905, and so on as in the advertisement. The time of maturity refers back to and is computed from 1904.
Other bonds referred to in the pleadings were sold and delivered ex coupons; not so as to the bonds here.
The acceptance of the bid by the plaintiff was in accordance with the terms on which the bonds had been advertised and offered for sale.
“For the entire issue of $250,000 or part thereof of Series A of the denomination of $1,-000 each payable in ten years from September 1st, 1904, bearing 5% interest per annum payable semiannually on the 1st of March and the 1st of September, we bid as follows:
$ 50,000 at 103.................$ 51,500 00
50.000 at 102%............... 51,437 50
50.000 at 102%............... 51,375 00
50.000 at 102%............... 51,312 50
50.000 at 102%............... 51,250 00
“Second. For the entire issue of $500,000 or a part thereof of Series B payable in twenty years from September 1st, 1904, bearing the same rate of interest-and payable in the same-manner and being 500 bonds of $1,000.00 each, as follows:
$100,000 at 103%...............$103,500 00
100.000 at 103%............... 103,375 00
100.000 at 103%............... 103,250 00
100.000 at 103%............... 103,125 00
100.000 at 103................. 103,000 00”
Required deposit was made to secure the bid. The motion was unanimously adopted accepting this bid.
The question at issue is whether plaintiff has a right to the coupons preceding date March 1, 1905.
*274 There is no question but that by the advertisement and in the acceptance the language conveys the intention to convey the bonds with coupons attached, and it was after the date of the purchase that the coupons were detached to which plaintiff objected, as before mentioned, as in violation of the contract of purchase.
The date on which the bond was signed does not affect the right of plaintiff. The statute fixed the date on which the interest begins to run — that is, on September 1, 1904 —and the fact that the signatures before mentioned were not affixed to the bond before the time stated does not impair the value of the bond or lessen the extent of the right acquired by plaintiff. The board certainly sold the bonds with coupons due March 1, 1905, attached.
One of the defenses is that the statute under which the bonds were issued and which are referred to in the advertisement limited the power of the board, so that it could transfer coupons only from the date of the issue of the bonds.
That it must be presumed that the bidder knew the extent of the authority conferred by the lawmaking power on the board of commissioners, and if the board exceeded its authority that the bidder had no one to look to but himself. In other words, that a contract of a corporation which is ultra vires and beyond the power conferred by the Legislature is void; that, because ultra vires, the corporation cannot make the contract.
We have arrived at the conclusion that may all be true in one sense, and it may yet be that a corporation is bound by a contract into which it has entered. It has obtained a material benefit by offering coupons and by accepting a bid in regard to which it is fair to presume the coupons added to the amount which was bid over and above the par value of the bonds.
In reference to the proposition that the contract of the corporation was in excess of its power, great stress is placed upon the-language of the statute which reads:
“That the bonds shall bear interest at the rate of five per cent, per annum from the date of' their issue.”
These bonds according to the terms of the-statute bear its date; they all have coupons attached. In selling them, it is within the-power of the board to sell them with coupons, or without coupons attached. If it sells them,, as in this instance, with the coupons attached,, it can hardly go- back to the statute and thereon successfully claim that it has exceeded its authority.
True, as before stated, the statute (No. 44,. p. 98, of 1904) provides that the bonds shall bear interest from the date of their issue. But whenever, as in this case, a bond is advertised, sold, and the price paid, the date of' the issued is the date of the bond. It cannot well be otherwise. The date of issue applied to all of the series as issued from the date of the statute, and not from the date that the board sees proper to place the bonds on the-market.
We agree with -the statement referred to-by the learned counsel1 for defendant in their-brief, that “to constitute a delivery the obligator must do some act putting it beyond his power to revoke the instrument.” This is. precisely that which the board has done by selling bonds and coupons and receiving the-price. It -has placed it beyond its power to revoke the sale in whole or in part. In our conception, it has sold the coupons as well as. the bonds.
It is contended on the part of the defense, and in that connection reference is made to-the article of the Civil Code pertinent thereto, that there can be no interest on money which the board never received and whilst holder of the bond the board could not be as. debtor and creditor to itself.
The statute (No. 44, p. 98, of 1904) need not. *276 be interpreted so as that the defendant corporation will be placed in the position of creditor and debtor as relates to the interest fund made up in accordance with its direction.
The board does not hold the coupons for collection at any time before the bonds to which they are attached are sold and delivered.
Nor is the board indebted to an interest fund except to the extent that it collects an amount for that fund in carrying out the directions of the cited statute.
The interest fund is collected in accordance with the plan adopted for the management and administration of the finances of the defendant company.
It is to be applied to the payment of interest and to give value to the bond.
If the interest fund is ample, part of it may be applied so as to enable the board to sell bonds with coupons attached, if in that way it subserves good administration and proper management.
There is no iron cast rule under which to hold that coupons are not part of the bonds because in whole or in part they represent an interest preceding by a few months the date of the sale and actual delivery.
Considered from a practical standpoint, it is reasonable to assume that a well-managed corporation, as we have every reason to infer this is, was authorized to sell the bonds and coupons.
If legal1 objections are urged, after the sale and payment of the price, they must be based, to be sustained, upon the most convincing grounds to warrant reducing the value of the property sold.
We must infer, as before stated, that the board gave additional value to the bonds by selling them with the coupons, and to that extent it has received value which goes to the relief of the interest account. It is an amount received on account of interest.
A bond takes effect from delivery. When it is delivered, it carries with it that which only goes with it unless there is a reservation to the contrary. Rev. Civ. Code, art. 2461.
It strikes us that the right acquired relates back to the date of the bond unless there is a reservation to the contrary.
The case of Yesler v. Seattle, 1 Wash. St. 308, 25 Pac. 1014, is very similar. The bonds in that case also bore the date of their issue, and the question in the case was whether the interest also should bear from the date 'of their issue.
The court said:
“In financial parlance, the term ‘issue’ seems to have two phases of meaning: ‘Date of issue,’ when applied to notes, bonds, etc., of a series, usually means the arbitrary date fixed as the beginning of the term for which they run, without reference to the precise time when convenience or the state of the market may permit of their sale or delivery.
“The other sense or the other phase of meaning is, ‘when the bonds are delivered to the purchaser they will be issued to him.’ ”
We understand in large finance (in matter of government finance, for instance), the date of the bonds is generally referred to as the date of the issue of the bonds, as the bonds of a certain year, because they all bear the date of that year. For that reason it is safe enough to conclude that the first meaning given in the decision from which the quotation is taken is the correct meaning in a case such as we have now before us, in which all the parties up to the date of the sale must have acfed on the hypothesis that they had a right to issue bonds and coupons bearing the same date as forming part of the instruments offered for sale.
In concluding we will state that the bonds sold above par. It may well be presumed that the coupons maturing March 1, 1905, had something to do with the increased value above par. This increased value was paid for by plaintiff.
*278 For reasons stated, the judgment appealed from is affirmed.
NICHOLLS, J., takes no part, not haying heard the argument.