## AMERICAN SURETY CO. OF NEW YORK v. COVE IRR. DIST.

Circuit Court of Appeals, Ninth Circuit. January 23, 1928.

Rehearing Denied February 27, 1928.

No. 5120.

1. **Waters and water courses** ⬅➡230(4)— **Transfer of irrigation district bonds with interest coupons attached, transferee repaying unearned interest, held compliance with statute (Rev. Codes. Mont. 1921, § 7214).**

Transfer of bonds of irrigation district, in which interest coupons remained on bond, not canceled, and unearned portion of them was repaid to district by transferee, *held* proper procedure, under Rev. Codes Mont. 1921, § 7214, requiring that irrigation district bonds should never be sold at less than 90 per cent. of value "and accrued interest thereon to date of delivery."

2. **Waters and water courses** ⬅➡230(4)—**Statute requiring irrigation district commissioner to fix date bonds may be issued held inapplicable to bonds issued under prior act (Laws Mont. 1921, c. 153; Laws Mont. 1923, c. 157).**

Provision of Laws Mont. 1923, c. 157, requiring commissioner of irrigation district to fix date bonds may be issued, *held* immaterial in consideration of bonds issued under prior act (Laws Mont. 1921, c. 153) containing no such requirement.

3. **Waters and water courses** ⬅➡228½—**Surety, in determining liability to irrigation district after contractor's default, could deduct interest from proceeds of sale of bonds, proceeds of which were payable to contractor.**

Where contractor agreed to accept irrigation district's bonds at intervals, repaying unearned interest, and afterwards agreed to sale of remaining bonds, future payments to be made in money, unearned interest to time of payment being refunded, less accrued interest on proceeds of sale of bonds, contractor's surety, after contractor's default, *held* entitled to deduction from liability of interest on proceeds realized from sale of bonds, to be subtracted from accrued interest to be allowed district.

4. **Waters and water courses** ⬅➡228½—**Agreement between irrigation district and contractor, incorporated after contractor's default in surety's agreement with other contractors, held to govern rights as to payment for completion of work.**

Where agreement between contractors and irrigation district, approved by contractor's surety, for sale of certain bonds, was made part of contract between surety and other contractors to complete work after original contractor's default, former agreement *held* to control rights of irrigation district and surety company in paying for completion of construction work.

In Error to the District Court of the United States for the District of Montana; Charles N. Pray, Judge.

Action by the Cove Irrigation District against the American Surety Company of New York. Judgment for plaintiff, and defendant brings error. Affirmed.

Sterling M. Wood and Robert E. Cooke, both of Billings, Mont., for plaintiff in error.

W. M. Johnston and H. J. Coleman, both of Billings, Mont., for defendant in error.

Before HUNT, RUDKIN, and DIETRICH, Circuit Judges.

HUNT, Circuit Judge. The surety company asks reversal of a judgment for $4,877.99, rendered against it in an action brought by the irrigation district upon a surety bond.

On September 28, 1922, the Cove irrigation district, organized under the laws of Montana, entered into a contract with Schlueter Bros., contractors, for the construction of certain irrigation works. Contractors agreed to do the work specified and to pay the district $60,000 in cash for the purpose of enabling the irrigation district to meet its outstanding obligations, and to accept in payment therefor bonds of the district of the par value of $279,000, bonds to be delivered to the contractors as the work progressed, and upon delivery of the bonds "accrued interest thereon shall be paid by the contractor to the district; * * * it being expressly understood and agreed that all accrued interest on such bonds at date of delivery shall be then paid by the contractor to the district." The surety company wrote the contract bond for the faithful performance of the work by the contractors. The bonds were printed, and provided that the interest should be paid semiannually on the 1st days of January and July upon presentation and surrender of the respective coupons thereto attached. On July 19, 1923, the contractors and the irrigation district entered into an agreement, approved by the surety company, that the bonds, amounting to $117,600, then remaining in the hands of the district, should be marketed, and the proceeds from the sale should be substituted for the bonds of the district in payment of the amounts becoming due the contractor.

The agreement modifies the original contract between the district and the contractor by the following clause: "That in making such payments the district shall also be given credit for interest which would have accrued on the necessary bonds to make such payment if this supplemental agreement had not been entered into, less interest, accumula-

tions, if any, received from the said county treasurer." It was expressly understood and agreed that the district should "in no event be liable to the contractors under the said agreement of September 28, 1922, as modified hereby, for more than the proceeds of the sale of said bonds required to be deposited with the county treasurer as aforesaid, less such interest that would have accrued if said bonds had not been sold," etc., and, further, "that payments hereafter made under said contract to the contractors shall be warrants of the district drawn upon the funds so deposited with the said county treasurer; * * * that in making such payments the district shall be given credit for interest which would have accrued on the necessary bonds to make such payment if this supplemental agreement had not been entered into."

The contractors defaulted under the original contract, and thereafter an agreement was entered into, on October 9, 1923, between the surety company and certain contractors, for the completion of the work comprehended by the September, 1923, agreement. This October agreement provided that the sum of $85,566.62 then in the treasury of the district, derived from the sale of bonds made under the agreement of July 19, 1923, should be used to complete the work contemplated by the original contract of construction, and that any further funds required, up to $100,000, were to be supplied by the surety company. It appears that, when that sum of $85,566.62 was practically exhausted, the irrigation district called upon the surety company to meet the terms of its agreement of October 9, 1923. The surety company complied to the extent of payments of $47,516.50, which, with the payments previously made by the district, were sufficient to meet the estimates, except the final one for the completion of construction work. The district had on hand $3,587.25 from the original sum of $85,566.62, and the final estimate was $5,717.18. The surety company contended that it was entitled to a credit, $1,747.16, interest, received by the county treasurer upon the proceeds, while in his hands, from the sale of the bonds, which amount, added to $3,587.25, is $5,334.41. Subtracting $5,334.41 from the final estimate of $5,717.18, there is a balance of $382.77, which the surety company asserts is all it is obligated to pay under its contract. The position of the district is that interest is due as per estimated tables showing amounts for which bonds would have been issued, if the estimates had been paid in bonds instead of money.

The District Court found that on July 19, 1923, the irrigation district had in its possession bonds of the par value of $117,600, which bonds were sold on July 20, 1923, under the agreement of July 19, 1923; that at the time of the sale of the bonds all matured interest coupons were detached and the surety company was given credit for the interest which accrued from July 1 to July 20, 1923; that the dates and amounts of all estimates for work done and materials furnished after July 19, 1923, were correctly set forth in the complaint; and that interest accrued on the bonds so sold between July 20, 1923, and the dates upon which they would have been used in paying estimates, if not sold, was $4,495.-32. This amount was arrived at by computing interest as by a statement in evidence allowing as credit the balance of $3,587.25 in the treasury, plus the $1,747.16 interest collected by the county treasurer. Judgment was ordered for the district.

The resolution providing for the issuance of the bonds was had and adopted July 1, 1922, under authority conferred by the Montana Civil Code for 1921. The bonds were dated October 25, 1922, and provided for payments of principal, together with interest thereon from date thereof at the rate of 6 per cent., payable semiannually on the 1st days of January and July of each year during the period of the bond, upon presentation and surrender of the respective coupons attached to the bonds as they severally became due and payable. The contract for the work made with the Schleuters in September, 1922, explicitly provided that, as the work progressed, bonds were to be delivered upon monthly estimates, less 10 per cent. to be retained until final completion, and that, when any bonds were delivered to the contractor, the accrued interest thereon was to be paid by the contractor to the district.

The subsequent contract of July 19, 1923, providing that the $117,600 of bonds then remaining in the hands of the district, should be sold and the proceeds substituted for the bonds of the district in the payment of amounts becoming due to the contractor was very clear in providing that, in making such payments, the district was to be given credit for interest which would have accrued on the necessary bonds to make such payments becoming due to the contractor, if the supplemental agreement had not been entered into, less interest, if any, received from the county treasurer, and that the district should not be liable to the contractors for more than the proceeds of the sale of the bonds required to be deposited, less such interest as would

have accrued if the bonds had not been sold, and that the proceeds, less such accrued interest, should take the place of the said bonds referred to in the September agreement as fully and completely as though such moneys had been designated in the first instance in the contract, instead of the bonds. The district having been bound under the original agreement of September, 1922, to deliver the bonds as the work progressed, the interest from the date of October 25, 1922, up to the time of delivery, was to be paid by the contractor. Such a provision in a contract for the sale of bonds is quite common and in harmony with the Montana statutory provision (section 7214, Revised Codes of Montana 1921) that irrigation district bonds shall never be sold at less than 90 per cent. of their value "and accrued interest thereon to date of delivery."

The Supreme Court of Kansas, in Fields v. Allen County Investment Co., 109 Kan. 582, 201 P. 70, referring to purchases and sales of interest-bearing securities at par and accrued interest, said that computation should be made as to what part of the interest was already earned or had accrued, and what part had yet to accrue before the next interest-paying date.

A statutory requirement that bonds should not be disposed of at less than par value was considered in Village v. Fish, 156 N. Y. 363, 50 N. E. 973, where, referring to State v. Delafield, 8 Paige, 527, the court said that, if state officers could issue bonds which would draw interest immediately and still be permitted to give to the purchaser of the bonds the use of money loaned for months without interest, they could have sold the bonds upon a contract that they should be delivered and draw interest immediately, and that the purchaser could advance the nominal amount of the bonds in installments of from one to five years as the same might be wanted by the complainant to carry on its public works. In Smith v. State, 99 Miss. 859, 56 So. 179, 35 L. R. A. (N. S.) 789, the court well said that the equal or par value of an interest-bearing security on the date of its issue is a value equal to the principal: "On any day subsequent to its issuance, it is a value equal to the principal plus accrued interest, or, to be more accurate, plus the then value of the accrued interest. The nominal value of such a bond necessarily increases with each passing day by the amount of the accrued interest, which, on its face, it promises to pay."

[1] Full value of the bonds transferred being what the authorities were under a duty

to obtain, the method adopted, whereby the coupons should remain not canceled, and requiring that the unearned portion of them should be repaid to the district by the contractor, was in substantial compliance with the statute. Yesler v. City of Seattle, 1 Wash. 308, 25 P. 1014; Stowell v. Irrigation District, 155 Cal. 215, 100 P. 248; Board of Directors v. Mineah, 112 Wash. 325, 192 P. 997; State ex rel. Hoffman v. Moore, 46 Neb. 590, 65 N. W. 193, 50 Am. St. Rep. 626; State Nat. Bank v. Board of Commissioners, 121 La. 269, 46 So. 307.

The July 19, 1923, contract, providing for the sale of bonds then unsold and the deposit of proceeds, which were to be disbursed when the work was performed, was, of course, made with the knowledge that the bonds bore interest at 6 per cent. from the date of their sale and delivery. Without any adjustment of interest between the time of sale and the dates when the original contractors would have become entitled to delivery, as the work went on, clearly the district would have suffered loss of the amount of interest, from July, 1923 (some $4,495.32), which it was obligated to pay the holders of the bonds. This amount of interest was much in excess of the sum by way of interest ($1,746.16) upon the proceeds of the sale made in 1923 in the hands of the county treasurer. The contract of July, 1923, met such a situation by the provision that the district should receive credit for interest which would have accrued on the bonds required to make payments as the work progressed, as if that agreement had not been entered into less interest accumulated in the hands of the county treasurer.

We can perceive no real difference in the provision of the two contracts with respect to payment of accrued interest. Both were valid, enforceable agreements; the later one carrying the same arrangement as was included in the earlier.

[2] We are referred to the statute (chapter 157, Laws of Montana 1923), which requires the commissioner of an irrigation district to fix the date of bonds which may be issued. Because of that requirement, it is said that, inasmuch as the resolution pertaining to the issue of the bonds involved in this action failed to fix an express date of the bonds, therefore the issue was not legally dated October 25, 1922, and that interest can only run from the date of the delivery of the bonds. Precisely what may be the true construction of the provisions of the amended or 1923 statute is, we think, now immaterial, for the bonds in question were issued, and the proceedings preliminary to their issue were had, under the act of 1921 (Laws 1921, c. 153), which contained no requirement that the commissioner should fix the date of the bonds. They were issued in accordance with that practice to which we have referred, and which was fairly contemplated by the 1921 statute, whereby bonds are prepared and printed and dated before any sale, and have coupons attached evidencing interest to be paid from the date of the bonds; the purchaser to pay in cash interest accrued up to the date of sale and delivery. Thus the district would receive full value for its obligations and the law was complied with.

[3] The plaintiff in error was entitled to a deduction of the amount of the interest earned from the proceeds in the hands of the county treasurer realized from the sale of the bonds. The contract was that such sum ($1,747.16) should be subtracted from the accrued interest to be allowed the district.

[4] Our conclusion is that the contract of October 9, 1923, made with the Security Bridge Company and others, had relation to the first contract with the Schleuters, but did not annul the contract of July, 1923, for the sale of the bonds and application of the proceeds of sale. As confirming this view, the contract of October 9, 1923, between the surety company and the district, expressly provides that the surety company shall not be released from its obligation as surety under the bond of October, 1922, by the consummation of the agreement of even date therewith; that is, the contract with the Security Bridge Company. Furthermore, it was provided in that contract that the provisions of the July 19, 1923, agreement for the sale of the bonds should constitute part and parcel of the agreement; also that the proceeds from the sale of the bonds should be used to pay for the completion of the improvements after making the necessary interest adjustments "as provided for in said agreement of July 19, 1923."

Plainly, by the provisions cited, the July 19, 1923, contract was made part of the October 9, 1923, agreement, and controls the rights of the parties, as they were adjudicated by the District Court.

The judgment is affirmed.