**MOUTON et al. v. CITY OF LAFAYETTE.**

Nos. 32621, 32704.

Jan. 29, 1934.

J. J. Davidson, Jr., of Lafayette, for appellant.

Voorhies & Labbe, F. Xavier Mouton, and Charles D. Caffery, all of Lafayette, for appellees.

O'NIELL, Chief Justice.

This suit is founded upon two distinct causes of action and presents two separate demands. The plaintiffs are six taxpayers

in the city of Lafayette. They sued to annul a tax of one mill, levied in 1932, to pay the amount falling due in 1933 on a series of refunding bonds, amounting to $125,000 dated March 1, 1932. The plaintiffs sued also to reduce a tax of 1.75 mills to .9 of a mill. That tax was levied to pay the amount falling due in 1933 on a bond issue known as "Public Improvement Bonds, Second Issue"; the contention of the plaintiffs being that the tax of 1.75 mills was .85 of a mill more than was necessary to pay the amount of the bonds and interest falling due that year. As an incident of the demand to reduce the tax of 1.75 mills to .9 of a mill, the plaintiffs claimed that a certain ordinance, being Ordinance No. 242, adopted on January 31, 1933, to redistribute the excess of .85 of a mill in the tax of 1.75 mills, was null, for the several reasons set forth in the plaintiffs' petition. The defendant, city of Lafayette, filed an exception of no cause or right of action, which was overruled; and the city then answered, admitting the relevant facts alleged, but denying the conclusions drawn by the plaintiffs. The case was submitted on a statement of facts, admitted by all parties. The district court gave judgment for the plaintiffs on their demand to annul the one-mill tax, and annulled it, but rejected the other demands of the plaintiffs. The city appealed from the judgment in so far as it annulled the one-mill tax; and the plaintiffs answered the appeal by praying for an amendment of the judgment so as to reduce the tax of 1.75 mills to .9 of a mill, and, incidentally, to annul the ordinance No. 242. Thereafter, the plaintiffs, having some doubt about the efficacy of their answer to the appeal, obtained a devolutive appeal from the judgment, and had the appeal consolidated with the city's appeal.

The attorney for the city contends that the plaintiffs' answer to the city's appeal cannot be of any avail because the city appealed only from that part of the judgment that annulled the one-mill tax. We doubt that the contention is well founded, because it is always the case, where a judgment is rendered partly against the plaintiff and partly against the defendant in the suit, that the party appealing complains only of that part of the judgment that is against him. But the question of efficacy of the plaintiffs' answer to the city's appeal is a matter of no importance, since the plaintiffs also have appealed from that part of the judgment which rejected their demand to reduce the tax of 1.75 mills to .9 of a mill, and their incidental demand to annul the Ordinance No. 242. The attorney for the city has moved to dismiss the plaintiffs' appeal, because the motion for the appeal was made with reservation of the plaintiffs' right under their answer to the city's appeal. Hence it is argued that the plaintiffs' appeal is only a conditional appeal, depending upon the court's refusal to consider favorably the plaintiffs' answer to the city's appeal. Conceding all of that to be well said, the plaintiffs' complaint of the judgment in so far as it rejects their demand to reduce the tax of 1.75 mills to .9 of a mill is surely before the court—if not by virtue of the plaintiffs' answer to the city's appeal, then by virtue of the plaintiffs' devolutive appeal. The motion to dismiss the appeal is not supported by any substantial reason, and is therefore overruled.

■ We take up, first, the city's appeal from the judgment annulling the one-mill tax. The facts, as we have said, are admitted. The issue of $125,000 of bonds was authorized by a vote of the property taxpayers, in November, 1931, to refund an indebtedness of the city, for that amount, for wages, and on open accounts, etc. The city advertised for bids to be received on April 5, 1932, for the sale of the bonds, but no bids were made. Thereafter the municipal authorities endeavored faithfully to dispose of the bonds, but without success. Meanwhile the bonds were engraved and signed and deposited with the trustee of finance to be held by him until sold. The bonds are dated March 1, 1932, and mature annually during a period of 25 years, the first maturing bond being due on March 1, 1933. On the 16th of November, 1932, the trustee of finance directed the assessor to extend on the assessment rolls the tax of one mill, to pay the amount falling due in 1933. That is the tax which the plaintiffs complained of as being premature, because the bonds had not been sold, and in fact they have not yet been sold.

We agree with the district judge that a tax levied to pay bonds which have not been issued, even though the issue has been authorized by a vote of the property taxpayers, is premature. It was so held in Kansas City Southern Railway Co. v. Hendricks, Mayor et al., 150 La. 134, 90 So. 545. It is contended by the attorney for the city that the decision rendered in that case is not applicable here because the bonds that were to be issued in the case cited were to represent a debt to be incurred by the issuing of the bonds, and in this case the proceeds of the bonds to be issued were to be used to pay debts already existing. The argument, however, loses its force when we consider that the bonds in this case were not to be given to the creditors of the city, in substitution or representation of the claims which they already had, but were to be sold, in order that the proceeds might be used in payment and extinguishment of the debts then due. It is argued also on behalf of the city that the decision in the Kansas City Southern Railway Company's Case is not appropriate because it was founded upon a provision in article 281 of the Constitution of 1913 that the tax should be levied "each year while any bonds thus issued are outstanding," and because the qualifying statement, "while any bonds thus issued are outstanding," was omitted from the Constitution of 1921, art. 14, § 14(a), and from section 35 of the enabling act, Act No. 46 of 1921 (Ex. Sess.)—under the provisions of which this bond issue was authorized. It is true that the expression "while any bonds thus issued are outstanding," which appeared first in the amendment of article 281 of the Constitution of 1898 pursuant to Act No. 197 of 1910, and which was retained in article 281 of the Constitution of 1913, was omitted from section 14(a) of article 14 of the Constitution of 1921, authorizing municipalities and other political corporations to issue negotiable bonds and to levy special taxes to pay them. But the reason for the omission was, obviously, to avoid redundancy. It was deemed sufficient to say —as the Legislature did say—that the tax to be levied each year should be sufficient to pay the principal and interest on the bonds falling due each year. That statement made

it plain enough that no tax should be levied for any year in which no bond or interest on any bond would fall due—without the further statement that the tax should be levied only "while any bonds thus issued are outstanding." It is too obvious to admit of much discussion that they who drafted section 14(a) of article 14 of the Constitution of 1921, and section 35 of Act No. 46 of 1921 (Ex. Sess.), did not intend, by omitting the clause "while any bonds thus issued are outstanding," that a tax should be levied each year, whether the bonds were issued or not issued, or outstanding.

The attorney for the city cites the case of Gray v. Bourgeois, Tax Collector, 107 La. 671, 32 So. 42, where it was held that, under the authority granted by a vote of the property taxpayers for the municipality to incur a debt and to issue negotiable bonds, and to levy a tax to pay the bonds, the municipality might incur the debt and levy the tax to pay it, without issuing the bonds. But that case was governed by the provisions of article 281 of the Constitution of 1898 before it was amended pursuant to Act No. 197 of 1910; and, according to the article, before it was amended, the taxpayers authorized, and the municipality levied, a specified tax for the whole period of the bond issue. Hence the court took the view that the incurring of the debt and the levying of the tax were specifically authorized by the vote of the taxpayers, even though the bonds might not be issued. The purpose and effect of the amendment of article 281 of the Constitution of 1898, which amendment was carried into the corresponding article of the Constitution of 1913; and retained in section 14(a) of article 14 of the Constitution of 1921, was to authorize the governing authority of the municipality or other political corporation to levy each year a special tax sufficient to pay the bonds and interest falling due each year, without such authority being specifically granted by the vote of the property taxpayers authorizing the bond issue. The ruling in Gray v. Bourgeois, Tax Collector, therefore, is not appropriate here.

We understand from the argument of the attorney for the city of Lafayette that the trustees are yet hopeful of finding a purchaser for the $125,000 bond issue; but there is no assurance as to when that will be. Meanwhile, the intention of the trustees, as we understand, is to collect each year a tax that would be sufficient to pay the bonds and interest that would fall due each year, as if the bonds were issued, and to apply the avails of the tax, pro tanto, to the debts which the bonds were intended to take the place of. But the objection to that proposition is that it is too indefinite to be in accord with the financial arrangement which the taxpayers authorized by their vote. The court cannot approve such a temporary disposition of the avails of the proposed tax without assuming the responsibility of determining, arbitrarily, when a failure to dispose of the bonds shall put an end to the levying of the tax. The statute itself, under which the bond issue is authorized, Act No. 46 of 1921 (Ex. Sess.), contains a strong implication that the bonds shall be issued within three years from their date, or not at all; for it is provided, in the twenty-ninth section of the statute, that the governing authority of the municipality or other political corporation issuing the bonds,

in prescribing the dates of maturity of the bonds and of the interest thereon, shall make the first annual installment mature not later than three years from the date of the bonds. Our conclusion, therefore, is that the judgment of the district court, annulling the one-mill tax, is correct.

█ As to the plaintiffs' appeal from the judgment rejecting their demand for a reduction of the tax of 1.75 mills to .9 of a mill, it appears that the tax of 1.75 mills was a part of a total of 8¼ mills levied to pay the maturities on three groups of bonds, designated and carried on the books of the city as public improvement bonds, second issue; public improvement bonds, third issue; and public improvement bonds, fourth issue. The bonds of the so-called second issue were issued in 1917, pursuant to Ordinance No. 38; the bonds of the third issue were a group of bonds issued in 1929, pursuant to Ordinances No. 62, 63, 64, and 65; and the bonds called fourth issue were a group issued also in 1929, pursuant to Ordinances No. 203, 204, and 205. Each one of these ordinances authorized the tax assessor to extend on his rolls, and authorized the tax collector to collect, each year, a tax sufficient to pay the amount falling due each year. The subsequent grouping of the bonds into three so-called "issues" was done merely as a matter of convenience in calculating the amounts maturing each year. The report of the city auditor in 1932 showed, correctly, that it required a tax levy of 8¼ mills to pay the maturities on the three groups, or bond issues, in 1933; a small part of which, however, was a deficit from the previous year, which a bank had taken care of temporarily. The preface to the auditor's report showed, erroneously, that it required a tax levy of 1.75 mills to pay the 1933 maturities on the so-called second issue; but the report itself showed, correctly, that a tax of .9 of a mill was sufficient, and that the excess of .85 of a mill belonged to the so-called third issue and fourth issue. The assessor, being misguided by the error in the preface to the auditor's report, levied the tax of 1.75 mills, instead of .9 of a mill, for the second issue, and levied a tax of 4 mills for the third issue, and a tax of. 2½ mills for the fourth issue. On the 24th of January, 1933, the present plaintiffs, who had not yet brought their suit, complained of the excess of .85 of a mill levied to pay the maturities on the second issue; and, on the 31st of January, 1933, the municipal council corrected the error by adopting Ordinance No. 242, reducing the tax of 1.75 mills for the second issue to .9 of a mill, and increasing proportionately the taxes levied, respectively, for the third issue and the fourth issue; but, in so doing, of course, the total levy of 8¼ mills for the three bond issues remained the same. The plaintiffs admit in their brief that the city had the right to levy these three special taxes, amounting to 8¼ mills, to pay the maturities and the deficits on the three bond issues; but they complain of the method by which it was done—particularly with regard to the adoption of Ordinance No. 242, correcting the error in the distribution of the total tax of 8¼ mills. The first complaint in that respect is that the municipal council did not observe the requirement of section 5 (47) of the City Charter, Act No. 310 of 1914, p. 647, that an interval of at least ten days must intervene between the introduction and the adoption of any ordinance,

except such ordinances as are declared to be urgent. A sufficient answer to that is that an ordinance, in its technical sense, was not necessary to correct the error in the distribution of the total tax levy of 8¼ mills. A resolution of the municipal council, or any such formal instruction to the assessor, would have been sufficient. The important fact is that the ordinance did nothing more than to correct an error in the distribution of the three tax levies, the total amount of which, 8¼ mills, was correct, and was not increased. The taxpayers, therefore, were not affected either by the error or by the correction of the error. The second complaint, in that respect, is that there was really no ordinance levying the excess of .85 mills, which was merely redistributed by Ordinance No. 242. It is admitted, however, that the original ordinances under which the bonds were issued, No. 38, 62, 63, 64, 65, 203, 204, and 205, made provision, respectively, for the levying each year of a tax sufficient to pay the amounts falling due each year. Hence it was not necessary to levy an additional tax of .85 of a mill to provide for the deficits in the taxes collected for the amounts falling due in the so-called third issue and fourth issue. Inasmuch as the taxes assessed in any given year may not be all paid, the taxing authorities cannot calculate exactly, but can only estimate, what the avails of a tax levy will be; and, in making their estimate, the taxing authorities are not allowed to make more than a reasonable allowance for non-payment of taxes. Tremont Lumber Co. v. Police Jury of Winn Parish, 164 La. 257, 113 So. 839. Hence, in estimating the amount of the tax required to pay the bonds and interest falling due each year, the authority to include a deficit occurring in the preceding year goes without saying. The third and last complaint of the plaintiffs, in that respect, is that Ordinance No. 242 is null because it was an attempt to levy a tax for a year which had expired. It is a sufficient answer to say that the ordinance was not an attempt to levy a tax, but was merely a correction of an error in the distribution of the 8¼ mills of taxes which were already levied.

The judgment is affirmed.