**FRANK GROCERY CO., Inc., v. MANDEL.**

No. 4768.

Court of Appeal of Louisiana. Second Circuit.

March 2, 1934.

Claude B. Prothro, John F. Phillips, and Wise, Randolph, Rendall & Freyer, all of Shreveport, for appellant.

Jackson & Smith, of Shreveport, for appellee.

MILLS, Judge.

The only issue involved in this case is whether or not the grocery business conducted in the city of Shreveport under the name of "Mandel's Grocery" was owned by the solvent Robert S. Mandel, or his brother, the insolvent Theo Mandel.

The lower court found that the business was owned by Robert and operated, as his agent, by Theo Mandel. From this judgment defendant has appealed.

The business was opened in 1914 and conducted, until the bankruptcy of Theo in 1929, under a sign reading "Mandel's Grocery." All matters concerning the business were handled by Theo. The insurance was carried in his name. The license was taken out in the name of Theo Mandel and openly posted in the store. During all the years prior to the bankruptcy, it is not shown that any salesman for any wholesale house ever solicited an order from Robert S. Mandel, or that any collector ever attempted to collect an account from him until just prior to the present suit. Though, because of his relationship, Theo being his only brother, brought to this country by him, defendant was frequently in the store; though defendant is a well-known business man, maintaining an office in the business section and a family residence, with one exception, it is not shown that any one ever directly spoke to him or received any communication from him in any way concerning the business of Mandel's Grocery. The single exception is the testimony of the president of the plaintiff company, who says that in 1920, when the Frank Grocery Company was organized, R. S. Mandel told him that he was helping his brother out and that he was letting him run the business in the name of R. S. Mandel and permitting him to sign his name to checks; that the Frank Grocery Company extended credit to Mandel's Grocery on the faith of this statement. He testifies further that checks were signed "R. S. Mandel, by Theo Mandel," and by Theo Mandel alone. He admits he never delivered a single order or statement to R. S. Mandel and claims that he never noticed the posted license in the name of Theo. His testimony as to the above admission is contradicted by R. S. Mandel.

Defendant offers in evidence nine checks dated in 1925; thirteen in 1927; twelve in 1928; and twenty-four in 1929, all payable to the Frank Grocery Company and all signed by Theo Mandel individually. Also a check dated January 1, 1929, for $100 in favor of R.

S. Mandel, signed by Theo, covering two months' rent on the building owned by R. S. Mandel and occupied by the business. Theo Mandel explains the failure to produce earlier checks by saying that all his papers were taken away by the trustee in bankrupty and that the checks offered are all that he could find.

When, in 1929, Theo was sued by the W. F. Taylor Company, plaintiff's credit manager went to Theo, not Robert, and offered to compromise its account for 50 cents on the dollar, though it was well known that Robert Mandel was fully solvent. It is proven and admitted by Theo that a number of wholesale concerns carried the account in the name of R. S. Mandel, but he says he always protested against this and told them that Robert had no interest in the business. He is not contradicted in this statement. He admits that bills were sent to the store in the name of R. S. Mandel, but says that he opened all communications except the private mail of his brother and never told him of the practice.

Bradstreet carried the business as owned by R. S. Mandel, but the testimony of its agent in regard to this is most unsatisfactory. He admits that he never received any authority or intimation from R. S. Mandel personally to authorize or justify this, though defendant was easily accessible at his office, at his home, by call, or by telephone. He admits that he just supposed R. S. Mandel was owner of the business because the wholesale houses carried it in his name and because Theo so stated. This is emphatically denied by Theo.

■ Agency cannot be proven by statements of the agent. Dawson v. Landreaux et al., 29 La. Ann. 363; State v. Harris, 51 La. Ann. 1105, 26 So. 64; In re Lafourche Transp. Co. v. Pugh, 52 La. Ann. 1517, 27 So. 958; Getty v. Chalmette Pet. Corp. (La. App.) 145 So. 568.

The testimony of the president and the collector of the W. F. Taylor Company is not of much help to plaintiff in its effort to connect R. S. Mandel with this business. The collector states that over a period of ten years all goods were billed to R. S. Mandel, but admits that though he is a personal friend of both Robert and Theo, he never spoke to Robert about the business. The president testifies that his company always carried the account in the name of R. S. Mandel, but without any authority from him. He explains the bringing of a suit by his company against Theo by saying that young attorneys made a mistake and had the bookkeeper scratch out the name of R. S. Mandel and insert that of Theo. Yet an examination of the record in that suit, filed in evidence, shows no erasure on the account, which is in the name of Theo Mandel and to which is appended the affidavit of the secretary-treasurer of the company, not the bookkeeper, that the above account of Theo Mandel is correct and unpaid.

Beyond the admitted fact that many wholesale firms and Bradstreet carried the business in the name of R. S. Mandel, and the testimony of plaintiff's president, which is contradicted by R. S. Mandel, there is nothing in the record to justify holding R. S. Mandel for this indebtedness. It is remarkable that the business was carried in his name by so many concerns without his becoming aware of the fact. But it is more remarkable that during this long period while he was perfectly solvent and accessible no demand was made upon him for the payment of any account until after the bankruptcy of Theo. Though both Theo and Robert S. kept their accounts in the same bank, no bank officer or employee is offered to prove that Theo had authority to sign checks for Robert. Furthermore, we cannot conceive how defendant would knowingly permit this business to be run in his name and yet jeopardize his insurance by having it taken out in the name of his brother.

■■ To hold a third person for the debts of another, or to prove his responsibility and liability for the debts of a business not conducted in his name, plaintiff must clearly show either direct authority or that defendant has by his own actions or statements induced the credit. The conduct of others not shown to be known to him will not suffice, nor can this knowledge be presumed in the face of direct denial and contradicting testimony. Davis v. Amereda Pet. Corp'n, 7 La. App. 114.

■ Though the case presents unusual and confusing features, we are not satisfied that plaintiff has sustained this burden of proof by a clear preponderance of the testimony. McCarty v. Straus, Baer & Straus, 21 La. Ann. 592; Henry Knight & Son v. Shall, 9 La. App. 98, 119 So. 80.

The judgment appealed from is accordingly reversed and the demands of plaintiff are rejected at its cost.