McBRIDE, Judge.
Plaintiff takes this appeal from a judgment dismissing its demands as of non-suit.
The claim is for $284.79. Plaintiff alleges that it leased to defendant a Plymouth automobile 'for which defendant owes rental for the period beginning November 1, 1949, and ending February -8, 19S0, aggregating $243.93; the balance of the claim represents the amount of damages sustained toy the automobile while in the possession of the defendant.
The answer, in -the main, denies the averments of the petition; defendant specially alleged that R. R. Rutherford, who purportedly, acted as. its agent,.was without authority to make the contract on its behalf.
Before making answer, .defendant interposed several exceptions, all of which were overruled. These exceptions, although reurged before us, need not be discussed, in view of the conclusions reached after a study of the merits of the case. ...
On December 22, 1948, Rutherford obtained from R. E. Walker Company, Inc., the automobile in question, on which date there was entered, into a written car-leading contract, R. E. Walker Company, Inc., the lessor, being represented by its' president, R. E. Walker. R. R. Rutherford signed the agreement ‘ as manager for Boylan’s Private Police, Inc., named as lessee. The lease term was for one year, “or to any date lessee may elect before December 22, 1949.” On July 25, 1949, O. E. Haring, Inc., the plaintiff here, purchased the contract from R. E. Walker Company, Inc. A-new contract was confected on that date, which R. E. Walker signed on 'behalf of “Auto Leasing Co., Div. of O. E. Haring, Inc.,” lessor. The lessee’s signature appears thusly: “R.. R. Rutherford, P. O. #1641, 318 Carondelet St., Room 410.” The claim arises out of. the latter lease.
The defendant is a small corporation which operates a general private police agency. Prior to his death in September 1950, the business was under the management of its president, ’ Milton W. Boylan, who seems to have been the owner of the controlling interest in the corporation. At the time of the trial of the cause in the lower court, the whereabouts of Rutherford, who had been discharged by the defendant on June 1, 1950, were unknown. R. E. Walker, plaintiff’s witness, stated that he believed Rutherford is deceased.
The. nature of the defense advanced by defendant makes it encumbent upon the plaintiff, to be successful, to prove that Rutherford was authorized to make the contract, or was held out by defendant as its agent with implied power to contract, or that the defendant either tacitly or ex *590 pressly ratified his acts. Davis v. Amereda Petroleum Corp., 7 La.App. 114.
The only witnesses having knowledge of the pivotal points involved in the case are R. E. Walker, who appeared for plaintiff, and T. N. Boylan, who testified for defendant. T. N. Boylan became connected with the private police agency in October 1948, because, we gather, of the illness of his father, Milton W. Boylan. His uncontra-dicted testimony is that Rutherford was employed as a bookkeeper by defendant, without power to negotiate contracts.
The only semblance of proof adduced by plaintiff to establish that Rutherford was the agent of the Boylan Company is that of R. E. Walker, which is to the effect that when the contracts were executed Rutherford represented himself to be defendant’s general manager and had full power to lease the automobile. Under well established law, such testimony in itself is insufficient to prove an agency. Dawson v. Landreaux, 29 La.Ann. 363; State v. Harris, 51 La.Ann. 1105, 26 So. 64; Baer v. Terry, 105 La. 479, 29 So. 886; Getty v. Chalmette Petroleum Corp., La.App., 145 So. 568; Frank Grocery Co. v. Mandel, La.App., 152 So. 775.
 In a ■ further attempt to prove the existence of the agency, Walker testified that he had several conversations by telephone with Milton W. Boylan, who informed him that Rutherford was his general manager and was competent to act for the corporation. The probative value of this -evidence is nil, as the courts have repeatedly said that evidence of that character is of the weakest kind. In Commercial Trust & Savings Bank v. Thorengren et al., La.App., 122 So. 92, 94, we observed: “ ‘Admissions by one deceased, proved by a witness who cannot be contradicted, much less convicted of perjury, are the weakest kind of evidence, and scarcely worthy of any belief.’ 1 H. D. p. 518, No. 7; Succession of Sinnott v. Hibernia Nat. Bank, 105 La. [705] 710, 30 So. 233; Calhoun v. McKnight, 44 La.Ann. 575, 10 So. 783; Succession of Townsend, 40 La.Ann. [66] 79, 3 So. 488; Gordon v. Stubbs, 36 La.Ann. [625] 631; Bodenheimer v. Bodenheimer’s Ex’rs, 35 La.Ann. 1005.”
Appellant also contends that the acts of Rutherford were tacitly ratified by virtue of the defendant having made use of the automobile in connection with the operation of its business. This contention has for its foundation Walker’s statements that on several occasions he saw uniformed patrolmen in the automobile with Rutherford, and that he once accompanied Rutherford in the automobile to visit a prospective client. We are cognizant of the case of Johnson v. Garrere, 45 La.Ann. 847, 13 So. 195, wherein the Supreme Court said that á principal’s acts will be liberally construed in favor of a ratification of the acts of an agent, but we do not think that on the occasions mentioned by Walker the presence of patrolmen in the car would amount to a showing that the automobile was used by the defendant in connection with its business affairs. It may well be that the patrolmen were guest passengers of Rutherford. In calling on the prospect for business, Rutherford might have made use of the automobile for his own convenience. We say this after taking into consideration the emphatic denials of T. N. Boylan that the Boylan Company ever used any automobile in its business pursuits. He testified that the personnel went to and from their posts of duty via streetcars, buses, and occasionally taxicabs.
Appellant further seeks to make out the plea of ratification by Walker’s testimony that on several occasions when the monthly rent became delinquent he would call Milton W. Boylan by telephone, and that on one occasion particularly, after calling Boy-lan, Rutherford came to him and settled the account. We have carefully analyzed' that part of Walker’s testimony and cannot find that he ever made the statement that the payment came from the defendant.. The seeming import of the testimony is that Rutherford settled with him. The record is devoid' of any evidence even remotely tending to show that Boylan’s Private Police, Inc., ever paid the rental under either of the two leasing agreements.
Appellant points out that bills for the rental were made out to Boylan’s Private Police, Inc., and mailed to defendant’s office, and argues that their receipt at the *591 Boylan office without objection or repudiation further served to make out a ratification of Rutherford’s acts. T. N. Boylan denied that any of the bills .ever reached Milton W. Boylan or himself. From his testimony that Rutherford received all incoming mail, we deduce that Rutherford, if the bills did reach the office, withheld them from the Boylans. The record reflects.that Rutherford has been guilty of concealing matters from his employer, was unfaithful in his trust, and was discharged for that reason. A reputable member of this bar testified that at his instance garnishment process was issued to Boylan’s Private Police, Inc., on a judgment which one of his clients held against Rutherford. Service of the process was made on the defendant through Rutherford, styled in the sheriff’s return as “general manager.” Rutherford did not inform either Milton W. Boy-lan or T. N. Boylan that the garnishment had been served, but undertook to make answer to the garnishment interrogatories himself. The attorney, becoming suspicious of the answer which alleged that Rutherford was considerably in debt to Boylan’s Private Police, Inc., telephoned Milton W. Boylan, who thereupon expressed surprise, stating to the attorney that he had no knowledge whatever of the garnishment having been served or answered. Not alone that, but citation in the present suit was served through and concealed by Rutherford. It was only after Rutherford’s discharge that T. N. 'Boylan found the citation and copy of the petition beneath the blotter on the desk which Rutherford had occupied.
After a review of all of the pertinent testimony, which is above discussed, bearing upon the points necessary to be considered, we do not think that the plaintiff has proved its case by a preponderance of the evidence. To a large measure the credibility of T. N. Boylan is involved, and the judge below undoubtedly believed him. We know of no valid reason for being in disagreement.
Defendant prays in its answer to the appeal that the judgment be amended so as to finally reject plaintiff’s demands. The judgment is one' of nonsuit, and we think that the city judge erred in not finally dismissing the demands. There should be a final determination of the claims of plaintiff as against the present defendant, as plaintiff has adduced all of the evidence it possibly could as to Rutherford being the agent of the defendant, and the defendant is entitled to the relief requested in its answer to the appeal. The judgment should have the effect of res judicata, and, therefore, should be amended to the extent prayed for by the appellee.
For the reasons assigned, the judgment appealed from is amended so as to dismiss plaintiff’s suit, and as thus amended, and in all other respects, the judgment is affirmed.
Amended and affirmed.