137 So.2d 274 (1961)
242 La. 404
Succession of Mrs. Delia S. McCROCKLIN.
No. 45546.
Supreme Court of Louisiana.
June 29, 1961.
On Rehearing January 15, 1962.
*275 Pugh & Schober, Shreveport, Craig, Magee & Spann, Mansfield, for relators.
Gordon B. Golsan, Jr., Mansfield, for respondent.
SANDERS, Justice.
We granted certiorari in this succession proceeding to review a judgment of the Court of Appeal that six United States Treasury bearer bonds did not form a part of the succession of Mrs. Delia S. McCrocklin because of the prior manual donation of these bonds by the decedent to her granddaughter, Margaret Virginia Johnson, respondent herein.
Mrs. Delia S. McCrocklin died intestate in DeSoto Parish, Louisiana, on May 15, 1959. Jack S. McCrocklin, a son, was appointed administrator of her succession. An inventory of the property belonging to the succession was prepared and filed. Two of the heirs, Virginia McCrocklin Hewitt and Hasseltine McCrocklin West, filed a petition in which they sought to compel an amendment of the inventory so as to include the following items: (1) A 1959 Impala Chevrolet automobile; (2) Eight $1,000 United States Treasury 2½% bonds payable to bearer; (3) A drawing account of $1,175 with the Mansfield Lumber Company. The administrator filed an answer in which he alleged that these items were not owned by the decedent at the time of her death and specifically that the bonds had been donated by the decedent to her granddaughter, Margaret Virginia (Ginger) Johnson. Petitioners then obtained a writ of sequestration for the seizure of the bonds. Margaret Virginia Johnson and her mother, Margaret McCrocklin Johnson, moved for a dissolution of the writ of sequestration, with damages and attorney's fees for its wrongful issuance. Margaret McCrocklin Johnson died on April 21, 1960. Trial of the motion to dissolve was separately had, and by stipulation the evidence taken was also submitted to the court for the trial on the merits.
The district court decree that six of the bonds (two having been previously sold) were the property of the succession and ordered their inclusion in an amended inventory but otherwise rejected the demands of the petition. From the decree all parties appealed. In the Court of Appeal the parties pressed the issue of ownership of the bonds only. The Court of Appeal[1] reversed the decree of the district court, recognized Margaret Virginia Johnson as the owner of the bonds, and dissolved the writ of sequestration. A writ was granted by this Court on the application of Hasseltine McCrocklin West and Virginia McCrocklin Hewitt.
The essential facts may be stated briefly: The bonds were inherited by Mrs. Delia S. McCrocklin and delivered to her son and agent, Jack S. McCrocklin, by the Commercial National Bank of Shreveport on November 26, 1958. They were brought to the First National Bank in Mansfield. Willis Evans Calvert, the president of the bank, testified that shortly thereafter Jack S. McCrocklin, acting under authority from his *276 mother, requested that the bonds be placed in a safe at the bank. They remained there until December 22, 1958. At that time Mr. McCrocklin advised Mr. Calvert that his mother desired to make a donation of the bonds to Margaret Virginia Johnson, after which the bank would hold them for the donee. The bank then issued its receipt for the bonds on a deposit slip in the names of Ginger Johnson and her mother, Margaret McCrocklin Johnson. The name of Margaret McCrocklin Johnson was included in the receipt as a matter of convenience only at the suggestion of the banker. Miss Johnson was informed of the donation by Mr. McCrocklin, and on December 27 she and her mother acknowledged in writing receipt from him of the bonds, which were left at the bank. With the consent of Miss Johnson, two of the bonds were later sold by Mr. McCrocklin in order to pay an obligation of her mother.
The position of the relators is that the bonds are incorporeal movables (or credits) and hence are not susceptible to donation inter vivos by manual delivery; that they can be donated only by notarial act in conformity to LSA-C.C. Articles 1536 and 1538.[2] In the alternative, they assert that if the bonds are corporeal movable effects no manual gift was perfected because the evidence fails to establish a donative intent and a real delivery.[3] The respondent asserts that the bonds are currency, negotiable by delivery, and that she is the owner by virtue of a manual gift.
The sole issue presented is one of title to the bonds. The precise question framed by the pleadings is whether the title, or ownership, of the bonds was vested in Mrs. Delia S. McCrocklin at the time of her death or whether they were the property of the respondent, Margaret Virginia Johnson.
In former years this issue has been resolved by the application of Articles 1536 and 1539 of the Louisiana Civil Code relating to donations inter vivos. See Succession of Moore, 40 La.Ann. 531, 4 So. 460, wherein this Court sustained the manual gift of United States bearer bonds. Relying upon that decision, the Court of Appeal held that the bonds here in litigation were corporeal and that the decedent had made a valid manual donation of them under Article 1539 of the Civil Code.
Government bonds are instruments in writing reflecting the promise of a public body to pay a sum of money to the holder or bearer at a fixed or determinable future time. See 43 Am.Jur., Public Securities and Obligations, Sec. 6, pp. 274-275. It is conceded that the bonds in the instant case are negotiable.
The Louisiana Negotiable Instruments Law was designed and adopted to establish a law uniform with that of other states relating to negotiable instruments. It regulates the transfer of such instruments and the rights and obligations arising therefrom. The title to these bonds is therefore controlled by it. LSA-R.S. 7:1, 191; Succession of McGuire, 151 La. 514, 92 So. 40; Succession of Leroy, 157 La. 1077, 103 So. 328, 40 A.L.R. 503; State ex rel. Louisiana Sav. Bank & Trust Co. v. Board of Supervisors, 202 La. 176, 11 So.2d 521; Morgan v. United States, 113 U.S. 476, 58 S.Ct. 588, 28 L.Ed. 1044; Beutel's Brannan Negotiable Instruments Law (Seventh Edition), pp. 210-214; Ogden, Negotiable Instruments (Fifth Edition), Secs. 303, 304, pp. *277 562-565; Aigler, Bills and Notes (Second Edition), p. 10; 43 Am.Jur., Public Securities and Obligations, Sec. 161, pp. 398-400; 9 Tulane Law Review 602, 607. Cf. Mullen v. E. D. Green Realty Co., La.App., 147 So. 115; LeBlanc v. Volker, La.App., 198 So. 398.
In Succession of Leroy, supra, this Court sustained the transfer of a certified check as a valid manual donation under LSA-C.C. 1539 based, however, upon its negotiation under Section 30 of the Negotiable Instruments Law (now LSA-R.S. 7:30). The following language of the Court reflects the rationale of the decision [157 La. 1077, 103 So. 329]:
"The subsequent indorsement of the check in blank by Leroy and his delivery of the same to Mahoney was a negotiation of the check, and had the legal effect of making Mahoney the holder."
In Succession of McGuire, supra, after reference to the Civil Code provisions on donations, this Court sustained the donation of a stock certificate under the provisions of the Uniform Stock Transfer Act (now LSA-R.S. 12:521-543). Therein, the Court said [151 La. 514, 92 So. 43]:
"That contention appears to us to be well founded. Section 1 of the said act provides that title to certificates of stock and to shares represented thereby can be transferred by the delivery of such a document and of the certificate of stock; and sections 6 and 7, read together, provide that such a transfer is `effectual' even though the transferrer has received no consideration for same."
Under the Negotiable Instruments Law, the bonds in the instant case are negotiated merely by delivery. LSA-R.S. 7:30 provides:
"An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder completed by delivery."[4]
LSA-R.S. 7:191 defines delivery as follows:
"`Delivery' means transfer of possession, actual or constructive, from one person to another."
The evidence discloses that Jack S. McCrocklin handled the business affairs of his mother under a power of attorney. He came into possession of the bonds as her agent after she inherited them. The evidence convinces us that he was duly authorized to make delivery of the bonds as a donation to Margaret Virginia Johnson. The bank received them and issued a receipt to the respondent and her mother. The addition of the mother's name as a matter of convenience is not of controlling significance. Later a written receipt for the bonds was executed by them to Mr. McCrocklin in his capacity as agent. Under these circumstances we conclude that there was an actual delivery.
It is clear that a negotiable instrument may be negotiated by gift as well as for value. LSA-R.S. 7:30, 191; Succession of Leroy, supra; Britton on Bills and Notes (1943), Sec. 49, pp. 192-196; 9 Tulane Law Review 602, 607. Upon delivery Margaret Virginia Johnson became the holder of the bonds. From that moment she was entitled to negotiate them or to enforce payment at maturity in her own *278 name. We conclude that she held title to the bonds at the time of her grandmother's death. LSA-R.S. 7:30, 51, 58, 65, 191; Ogden, Negotiable Instruments, Sec. 109, p. 180; Britton on Bills and Notes, Sec. 123, pp. 523-526; Aigler, Bills and Notes, p. 389; 98 A.L.R. 296, 318-319.
The relators rely upon the decision of this Court in Succession of Land, 212 La. 103, 31 So.2d 609. In that case the Court held that certain government coupon bonds had not been validly donated by the decedent. These bonds were found in decedent's bank box enclosed in an envelope on which she had made a notation. The legal question raised was whether the donative writing pertaining to the bonds conformed to Article 1536 of the Civil Code. Although not specifically referred to, the absence of delivery was implied. Hence the case is distinguishable.
We hold that the respondent, Margaret Virginia Johnson, is the holder and owner of the bonds and that they form no part of the succession.
For the reasons assigned, the judgment of the Court of Appeal is affirmed.
FOURNET, C. J., concurs with written reasons.
McCALEB and HAMLIN, JJ., dissent with written reasons.
HAWTHORNE, J., does not participate.
FOURNET, Chief Justice (concurring).
As expressed in the majority opinion, the sole issue presented for determination is one of title to six $1,000 United States Treasury 2½% bonds payable to bearer that were purportedly donated by the decedent during her lifetime to her granddaughter, Mrs. Delia S. McCrocklin.
While I cannot subscribe to the majority view that the Louisiana negotiable instruments law is controlling or has any bearing on this issue, I am of the opinion that the bonds, being payable to bearer, were corporeal movable effects that were proper subjects of a manual gift, and, inasmuch as the facts of the case establish these bonds were actually delivered to the donee, the donation was not subject to any other formalities. See, Succession of Moore, 40 La.Ann. 531, 4 So. 460.
McCALEB, Justice (dissenting).
I am in accord with the views expressed by Justice HAMLIN in his dissenting opinion. The prevailing opinion does not attempt to answer relators' contention that it was essential, under Article 2996 of the Civil Code, for Jack S. McCrocklin to have an express power of attorney to donate the bonds as his mother's agent. Indeed, it was assumed by the Court of Appeal and is apparently taken as established by the majority opinion that, since McCrocklin stated that he had his mother's power of attorney, this was sufficient evidence to prove the existence of such a power and also that the power of attorney contained express authority to alienate his mother's property. To accept this sort of secondary evidence as proof, in the absence of a showing that the power itself has been destroyed or lost, is improper in my opinion.
Actually, respondents' whole case is founded on hearsay. For proof of the manual donation, the Court is required to rely upon the uncorroborated hearsay testimony of McCrocklin that his mother told him that she wanted Miss Johnson to have the bonds. This hearsay as to the statement of a party deceased is the weakest sort of evidence and, certainly, McCrocklin's statement to his banker of his mother's intention to donate the bonds is of no greater probative value.
Another unimpressive circumstance is that the bonds, on their delivery to the bank at Minden, were earmarked for the joint account of Miss Johnson, a femme sole, and her mother, assertedly on the suggestion *279 of the bank president. This socalled constructive delivery does not constitute, in my opinion, the real delivery provided by Article 1539 of the Civil Code which contemplates that the donee be given exclusive corporeal possession and immediate dominion and control of the manual gift. The lack of real delivery of the bonds to Miss Johnson's possession is conspicuously shown by the fact that, prior to the institution of these proceedings, two of the bonds were sold by Jack McCrocklin and two others were pledged by him to secure a bank loan to Miss Johnson's mother. To say, then, that Miss Johnson, who was living in New Orleans at the time, was given constructive possession of the bonds is unrealistic, particularly in view of her frank admission, during cross-examination, that she did not know that McCrocklin had sold two of the bonds or that he had pledged two others as security for a loan to her mother.
The district judge, who saw the witnesses and heard them testify, concluded that no donation had been effected. I think his judgment should be reinstated and affirmed.
HAMLIN, Justice (dissenting).
I am compelled to dissent from the majority opinion.
An inventory of the Succession of Mrs. Delia S. McCrocklin was filed by Jack S. McCrocklin, Administrator, in which the bonds herein under consideration were omitted.
Virginia McCrocklin Hewitt and Hasseltine McCrocklin West filed a petition, praying that the inventory be amended and reformed so as to include the bonds.
Jack S. McCrocklin filed an answer to said petition, alleging that, as agent for his mother, the bonds were delivered by him to the First National Bank in Mansfield for the account of his niece, "Ginger" Johnson. He did not allege the basis of his agency or authority, nor did he attach a power-of-attorney to his answer.
Margaret Virginia "Ginger" Johnson also filed pleadings, in which she did not allege the basis of Mr. McCrocklin's agency or authority, nor did she file or produce a power-of-attorney by Mrs. Delia S. McCrocklin to Jack S. McCrocklin.
Therefore, the burden of proof was upon Jack S. McCrocklin and Margaret Virginia "Ginger" Johnson to show the authority for Jack S. McCrocklin's agency.[1]
My appreciation of the record is that the only evidence of Mrs. Delia S. McCrocklin's intention or attempt to make the donation which was offered was the hearsay testimony of Jack S. McCrocklin. Jack S. McCrocklin testified that he had a written power-of-attorney "to take care of her affairs." Willis Evans Calvert, a banker, testified that he believed that Jack S. McCrocklin had a power-of-attorney.
This written power-of-attorney was not produced and is not in the record. We do not know the extent of the authority of Jack S. McCrocklin. We do not know whether he was authorized to make a donation on behalf of his mother. We do not know whether the word "donate" appears in the so-called power-of-attorney.
Article 1468 of the LSA-Civil Code provides:
"A donation inter vivos (between living persons) is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it." (Emphasis mine.)
Article 2996 of the LSA-Civil Code provides:
"A mandate conceived in general terms, confers only a power of administration.

*280 "If it be necessary to alienate or give a mortgage, or do any other act of ownership, the power must be express." (Emphasis mine.)
Article 2997 of the LSA-Civil Code provides:
"Thus the power must be express and special for the following purposes: * * * and in general where things to be done are not merely acts of administration, or such as facilitate such acts." (Emphasis mine.)
In view of the foregoing articles of the Revised Civil Code, it is clear to me that Jack S. McCrocklin has not shown that he had authority to make a donation on behalf of his mother, Mrs. Delia S. McCrocklin.
Being of the opinion that the evidence is insufficient to support the purported donation herein under consideration, I respectfully dissent.

On Rehearing.
HAMITER, Justice.
In the brief of counsel for Mrs. Virginia McCrocklin Hewitt and Mrs. Hasseltine McCrocklin West (referred to as relators) on this rehearing the following is said: "As set forth in relators' application for rehearing, it is their contention that the majority opinion was in error in two basic areas. First, it is respectfully contended that the majority erred in concluding that respondents had discharged their burden of proving the existence of a valid Power of Attorney, sufficiently specific by its terms to permit Jack S. McCrocklin, the alleged agent, to effect a valid manual donation of the property of the alleged principal, Mrs. Delia S. McCrocklin. Second, relators respectfully submit that the majority erred in concluding as a matter of fact and law that respondents had proved the consummation of a valid manual donation, in the light of the absence from the record of all of the essential elements of such a donation."
Article 2996 of our Revised Civil Code provides the basis for the mentioned first complaint. It recites: "A mandate conceived in general terms, confers only a power of administration.
"If it be necessary to alienate or give a mortgage, or do any other act of ownership, the power must be express."
That Jack S. McCrocklin was required to have an express power from his mother to donate was given recognition in the majority opinion on the original hearing when we stated that the "evidence convinces us that he was duly authorized to make delivery of the bonds as a donation to Margaret Virginia Johnson." And we reiterate and reaffirm our conclusion that a meeting of such requirement was adequately established.
Jack McCrocklin testified that his mother, long prior to her death, "had requested that I give Ginger this Eight Thousand Dollars worth of bonds." Of course, the effect of this testimony (even though styled hearsay in the dissenting opinions, it was admitted without objection) might be considered weak inasmuch as when elicited the person who made the request was not living. But it is corroborated by several substantial circumstances, the most important and strongest of which is the fact that such agent (a son of the intestate decedent) would benefit personally to the extent of one-fifth of the value of the disputed bonds (an amount in excess of $1000) if the alleged donation were ineffective. Among the other corroborating circumstances shown by the record are the following: Jack McCrocklin actively handled all of his mother's business affairs from the year 1935 to the date of her death on May 5, 1959. In November, 1958 he, as his mother's agent, received the bonds in question from a bank in Shreveport and carried them to the Mansfield bank for safe keeping. An official of the latter institution testified without objection that on December 22, 1958 (at an unsuspicious time) the agent told him that the mother *281 wanted to give the bonds to Ginger. Another son of the decedent, Tom McCrocklin, did not join relators in attacking (nor does it appear that he has ever protested) the gift.
It is true that in confecting the donation Jack McCrocklin deposited the bonds in the names of Ginger Johnson and her mother, Margaret Johnson; and, further, that later (after the passing of decedent) he arranged for and accomplished the sale of two of the bonds and the pledging of the remaining six to secure a loan. However, each of these transactions is satisfactorily explained.
The name of Margaret Johnson, who lived in Mansfield, was placed on the deposit slip (along with Ginger's) at the suggestion of a bank official. He pointed out that something might happen to Ginger (she was then working in New Orleans) and that some one else's name should also be listed.
With reference to the other transaction, Margaret Johnson (Ginger's mother) had undergone an operation and was without funds to pay the hospital and other expenses. To provide for these, and with Ginger's permission, Jack McCrocklin arranged with the Mansfield bank to sell two of the bonds. Pending the consummation of this sale, and inasmuch as the funds were needed immediately, the bank official loaned him $1700 on a note secured by a pledge of the remaining six bonds. This money was then deposited in the account of Margaret Johnson, and it was used by her in paying the expenses of her illness. When the proceeds of the mentioned sale were received later the previously made loan was paid in its entirety therewith.
The cases cited in the brief of relators' counsel on this rehearing do not militate against our above announced conclusion. They stand for the proposition, at the most, that the uncorroborated testimony of an alleged agent is not sufficient to prove his agency relationship. Here the testimony of decedent's agent is amply supported by substantial, corroborative circumstances.
Relators' second complaint above quoted is grounded on the contention that there was no proof of real delivery of the bonds to the donee within the intendment of the Revised Civil Code. On December 22, 1958, as before shown, the bonds were deposited with the Mansfield bank in the names of Ginger and Margaret Johnson. According to the record Ginger was notified of this deposit in the latter part of January, 1959; and during the following month (while on a short visit to Mansfield and prior to the death of decedent) she, together with Margaret Johnson, signed a document acknowledging receipt of the bonds "from Jack McCrocklin, Power of Attorney, for Mrs. Delia McCrocklin", they being particularly described therein by their respective numbers. These circumstances, in our opinion, were sufficient to satisfy the codal requirements relative to delivery and acceptance of the gift. See Succession of Zacharie, 119 La. 150, 43 So. 988 and Gibson et al. v. Hearn, 164 La. 65, 113 So. 766.
For the reasons assigned the judgment rendered herein on the original hearing is now reinstated and made the final decree of this court.
FOURNET, C. J., concurs for the reasons assigned when the case was originally before us.
McCALEB, HAMLIN and HAWTHORNE, JJ., dissent with written reasons.
McCALEB, Justice (dissenting).
I adhere to the views expressed in my dissenting opinion on first hearing and further elaboration would be unnecessary but for the fact that the majority opinion on rehearing attempts to answer two of the arguments advanced by relators which were not discussed in the original opinion.
*282 First, while the majority opinion apparently concedes that Jack McCrocklin was required to have an express power from his mother to donate the bonds, it is concluded that the evidence establishes that he had such a power. But this resolution, like all other factual findings in the case, is based solely on hearsay, i. e., McCrocklin's statement that his mother told him she wished to give the bonds to Miss Johnson.
In deciding this case on the hearsay and admittedly weak evidence of McCrocklin as to instructions given him by his mother prior to her death, the majority deduce that his testimony is sufficient to establish the reality of the alleged donation since it is corroborated by several alleged substantial circumstances. The first, which the majority opinion states to be the most important and strongest, is the fact that McCrocklin would benefit personally, as one of the forced heirs, if the alleged donation was held ineffective. Of course, this may be true if the alleged donation is a real donation. But it is difficult to perceive how this is a circumstance corroborative of McCrocklin's testimonyfor to say that his testimony is more credible because he would gain more financially than otherwise, if the donation is not sustained, is purely a matter of speculation. Such a resolution delves into the realm of motives, or lack thereof, and motive cannot be used as a substitute for corroboration.
Moreover, I fail to discern any substance in the other alleged corroborating circumstances to which the majority advert. The fact that McCrocklin actively handled his mother's business affairs for a number of years certainly cannot corroborate the factual existence of a mandate to donate the bonds which, under Article 2996 of the Civil Code, must be express. This is to say that the Codal Article means nothing.
Nor can the fact that McCrocklin told the banker that his mother wanted the bonds delivered to Miss Johnson corroborate his testimony that he had such authority. If the majority holding is correct in this respect, then hearsay becomes increasingly believable with the number of times it is repeated and each repetition is a corroborating circumstance.
And, lastly, the fact that McCrocklin's brother did not join the relators in assailing the reality of the donation can hardly, in my view, be regarded as a circumstance corroborating McCrocklin's testimony. This is totally irrelevant, dealing simply with the action or lack of action of one not a party to the suit. Yet it is now used as a corroborative circumstance to determine the reality of the donation.
I respectfully dissent.
HAMLIN, Justice (dissenting).
In my dissent from the majority opinion on original hearing, I set forth the condition of the pleadings and stated that the burden was upon Jack S. McCrocklin and Margaret Virginia "Ginger" Johnson to show the authority for Jack S. McCrocklin's agency. In Footnote 1, I cited Pitre v. Peltier, La.App., 122 So.2d 867, and Spies v. Caruso, 1 La.App. 544, and authorities cited therein.
I am still of the belief that the only evidence of Mrs. Delia S. McCrocklin's intention or attempt to make the donation which was offered was the hearsay testimony of Jack S. McCrocklin, which is not corroborated. Nor do I consider the "substantial circumstances" enumerated in the majority opinion on rehearing as corroborating circumstances to which any weight and import whatever may be given to prove agency. They are, in substance:
(a) That the agent would benefit to an amount in excess of $1,000.00 if the alleged donation were ineffective.
(b) That Jack McCrocklin actively handled all his mother's business from 1935 to the date of her death on May 5, 1959.

*283 (c) That Jack McCrocklin, when he carried the bonds to the Mansfield Bank, told an official that his mother wanted to give the bonds to "Ginger."
(d) That Tom McCrocklin, another son, did not join relators in attacking the gift.
The acts done by the agent after the decedent's passing, in my opinion, do not tend to prove agency before her death.
My appreciation of the jurisprudence is that the testimony of an agent cannot and does not prove agency. In Dawson v. Landreaux et al., 29 La.Ann. 363, there was an allegation that an agent was authorized to represent the defendants in a suit. This Court held that the testimony of the agent was not sufficient to prove the agency and further held as follows:
"Were we to arbitrarily presume the existence of the pretended mandate, we would have to as arbitrarily presume its nature and extent, whether it delegates mere power of administration, or specified and more important powers."
Also holding that the testimony of the agent cannot prove agency are the cases of State v. Harris, 51 La.Ann. 1105, 26 So. 64; Baer v. Terry, 105 La. 479, 29 So. 886; Getty v. Chalmette Petroleum Corporation, La.App., 145 So. 568; Frank Grocery Co. v. Mandel, La.App., 152 So. 775; and O. E. Haring, Inc. v. Boylan's Private Police, Inc., La.App., 56 So.2d 588.
In DeRouen v. Aiavolasiti, 121 So.2d 851, the Court of Appeal for the Parish of Orleans concisely stated the rule as follows:
"Agency cannot be proved by declaration of the reputed agent."
In Bush v. Decuir, et vir, 11 La.Ann. 503, this Court held as follows:
"There was no error in the refusal of the Judge to hear testimony to the effect that Samuel Bush, in the ordinary transactions of life acted as the plaintiff's agent. That could not have given him power, or even furnished presumptive evidence of a power, to accept donations or to make contracts of the nature sought to be established by the defendant." (Emphasis supplied.)
I am fearful that the holding in the majority opinion on rehearing may open the door to a series of similar transactions which could seriously affect the rights of heirs in future succession proceedings.
With the foregoing additional comment, I respectfully reiterate my dissent to the majority opinion on original hearing.
HAWTHORNE, Justice (dissenting).
I am of the opinion that the evidence in this case is not sufficient to show that the deceased expressly empowered her son to donate these bonds to her granddaughter, and for this reason I dissent. In my view the express mandate of a deceased person to donate property should be established by strong and convincing evidence.
NOTES
[1] 126 So.2d 364.
[2] LSA-C.C. Arts. 1536 and 1538 provide:

Art. 1536. "An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity."
Art. 1538. "A donation inter vivos, even of movable effects, will not be valid, unless an act be passed of the same, as is before prescribed.
"Such an act ought to contain a detailed estimate of the effects given."
[3] LSA-C.C. Art. 1539 states:

"The manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality."
[4] It was stipulated by the parties that the bonds "are negotiable by the simple means of manually handing the certificates themselves." This is consonant with the law that bearer instruments are negotiated by delivery only. LSA-R.S. 7:30, 191; State v. Board of Supervisors, supra; Holmes et al. v. Falsho Realty Co., Inc., 15 La.App. 585, 132 So. 519.
[1] See, Pitre v. Peltier, La.App., 122 So.2d 867; Spies v. Caruso, 1 La .App. 544, and authorities cited therein.